IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edmon Gasaway,<br><br>    Petitioner,<br><br>vs.<br><br>J. T. Shartle, Warden,<br><br>    Respondent. | No. CV-15-00248-TUC-RCC (CRP)<br><br>**REPORT AND RECOMMENDATION AND ORDER** |

Petitioner Edmon Gasaway, proceeding pro se and confined in the Federal Correctional Institution-Tucson, has filed a Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody. (Doc. 1, Pet.). Respondent has filed a Return and Answer to the Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus. (Doc. 10, Answer).[1] Petitioner has filed a Response to Government's Motion to Dismiss supported by a Memorandum of Points and Authorities. (Doc. 11, Reply).

Petitioner is presently serving a 387-month sentence as a result of his conviction on conspiracy and firearms offenses obtained in the Eastern District of Texas. (Answer at 2 &

---

[1] Petitioner originally named Louis Winn, Warden, as Respondent. (Doc. 1, Pet.). Respondent has moved to substitute Petitioner's current custodian, J. T. Shartle, in place of Louis Winn who is no longer employed at the Bureau of Prisons ("BOP"). (Answer at 1, n. 1). The Court will substitute J.T. Shartle, Warden, as the proper Respondent. Rule 25(d), Federal Rules of Civil Procedure.

1  Doc. 10-2, Ex. A, Mitchell Decl.; Doc. 10-3, Attach. 1, Judgment in a Criminal Case).[2]
2  Petitioner was incarcerated at the United States Penitentiary in Tucson, Arizona ("USP
3  Tucson") from March 29, 2013 to April 6, 2015. (Answer at 2; Doc. 10-3, Attach. 3, Inmate
4  History).

5  This matter has been referred to the Magistrate Judge for a Report and
6  Recommendation. (Doc. 6, Order at 3). For the reasons that follow. the Magistrate Judge
7  recommends that the Petition for Writ of Habeas Corpus should be denied.

**I.     The Petition for Writ of Habeas Corpus**

Petitioner asserts as grounds in the Petition that his due process rights were violated during prison discipline proceedings that resulted in his loss of good time credits. In Ground One, Petitioner alleges that the "due process requirement was abandoned" based on the "[f]ailure to provide adequate and meaningful investigation." Petitioner contends that no investigation was conducted regarding the Incident Report "as required by the applicable administrative rules, regulations and policy statements" of the Bureau of Prisons. (Pet. at 3). Petitioner asserts in Ground Two the unlawful taking of good time credits based on the alleged failure to have an investigating officer investigate the charged incident after the Incident Report issued. (*Id*. at 4). In Ground Three, Petitioner alleges that prison staff failed to document his complaint about the failed investigation, that is, Petitioner contends that during the prison discipline proceedings he alerted prison officials of the failed investigation but his complaint was not documented. (*Id*. at 6). With respect to all three grounds, Petitioner contends he was deprived of his defense to the discipline proceedings, his appeal was prejudiced, and the unlawful taking of good time credits should be removed from his record and his status restored. (*Id*. at 4-6).

Respondent argues in the Answer that Petitioner does not have a constitutional right to an investigation of the Incident Report, that the record shows prison staff investigated the

---

[2] Respondent has provided the Declaration of Lorri Mitchell, Legal Assistant, Federal Correctional Complex, Tucson, Arizona (Doc. 10-2, Ex. A), who has verified true copies of certain records submitted as Attachments with Respondent's Answer.

- 2 -

Incident Report, and that Petitioner received all the due process protections to which he was entitled. (Answer at 8-9). Respondent contends that some evidence supports the discipline decision and this case should be dismissed. (*Id*.). Respondent does not challenge Petitioner's claim that he exhausted his administrative remedies regarding his allegations. (*Id*. at 3).

**II.     Background**

**A.     The Inmate Discipline Program**

The Bureau of Prisons ("BOP") inmate discipline program identifies certain acts that are prohibited at the prison, classifies the severity of the prohibited acts as Low, Moderate, High and Greatest, and identifies sanctions to be imposed when an inmate is found to have committed a prohibited act. 28 C.F.R. §§ 541.1, 541.3 & Tables 1-2. The discipline process generally starts when a staff member issues an Incident Report to an inmate based on the staff member's observation or reasonable belief that the inmate has committed a prohibited act. 28 C.F.R. § 541.5. The Incident Report describes the incident and generally is delivered to the inmate within 24 hours of the staff member becoming aware of the inmate's involvement in the incident. *Id*. Following completion of a staff investigation, the Unit Discipline Committee ("UDC") reviews the Incident Report. 28 C.F.R. § 541.7. The inmate may appear before the UDC and may make a statement and present documentary evidence in his behalf. 28 C.F.R. § 541.7(d) & (e). The UDC may find that the inmate committed the prohibited act, it may find that the inmate did not commit the prohibited act, or it may refer the matter to the Discipline Hearing Officer ("DHO") depending on the seriousness of the prohibited act. 28 C.F.R. § 541.7(a).

If the Incident Report is referred, the DHO conducts a hearing at which the inmate may appear at the DHO's discretion. 28 C.F.R. § 541.8(e)(1). After the hearing, the DHO may find that the inmate committed the prohibited act charged or a similar prohibited act based on the Incident Report, may find that the inmate did not commit the prohibited act, or may refer the incident for further investigation, review and disposition. 28 C.F.R. § 541.8(a). The DHO must be an impartial decision maker who was not involved in the alleged incident as a victim, witness or investigator or who otherwise was not significantly involved in the

incident. 28 C.F.R. § 541.8(b). The DHO's findings must be based on "at least some facts and if there is conflicting evidence, on the greater weight of the evidence." 28 C.F.R. § 541.8(f). The DHO provides the inmate with a written copy of the decision. The DHO's decision must include findings on the following issues: (1) whether the inmate was advised of his rights; (2) the evidence relied upon; (3) the DHO's decision; (4) the sanction imposed; and (5) the reason for the sanction. 28 C.F.R. § 541.8(h). The inmate may appeal the DHO's decision through the Administrative Remedy Program. 28 C.F.R. § 541.8(i).

**B.     Factual Background**

On April 25, 2013, at approximately 1:45 p.m., prison staff at USP Tucson searched the cell occupied by Petitioner and another inmate and found under a locker a 6-inch piece of plastic sharpened to a point that had a string and tape handle. (Doc. 10-3 at 15-16, Attach. 4, Discipline Hearing Report referring to Incident Report #2437632; Doc. 10-3 at 18, Incident Report #2437632 ("Incident Report"), Part I). The reporting prison staff member that same date charged Petitioner in an Incident Report with a Code 104 prohibited act, possession, manufacturing, introduction of a weapon. (Doc. 10-3 at 18, Incident Report, Part I) . The Incident Report was delivered to Petitioner at 3:00 p.m. on April 25, 2013. (*Id.*).

A Lieutenant at the prison assigned to investigate the incident provided Petitioner with a copy of the Incident Report, advised Petitioner of his right to remain silent, and afforded Petitioner with an opportunity to make a statement. (Doc 10-3 at 19, Attach. 4, Incident Report, Part III). Petitioner allegedly stated that he understood his rights and said, "'No way, absolutely not, I just moved into that cell.'" (*Id.*). Petitioner did not request any witnesses. (*Id.*). The Lieutenant concluded based on the Incident Report, the photograph evidence and the inmate's statement, that the "report of (104) Possession of a weapon, is true as written," and forwarded the matter to the UDC for further review. (*Id.*; see Doc.10-3 at 23, Evidence Photograph).

Petitioner appeared before the UDC on April 27, 2013. (Doc. 10-3 at 18, Attach. 4, Incident Report, Part II). Petitioner provided a handwritten statement to the UDC. (Doc. 10-3 at 21-22, Attach. 4, Incident Report, Part II ("see attached statement" referring to the

- 4 -

attached unsigned handwritten statement)). Petitioner wrote in the statement that the Incident Report charging "possession 104" was "a big mistake;" that "we clean and check our cell on a daily basis for contraband, and we make sure that each of us and our property is free of such." (Doc. 10-3 at 22, Attach. 4). Petitioner also wrote that "[t]he officer reported that he found a weapon under a locker. This is impossible, cause the last I checked, the lockers were bolted to the wall and floor." (*Id*.). Based on the severity of the alleged incident, the UDC referred the charge to the DHO for further hearing. (Doc. 10-3 at 18, Attach. 4, Incident Report, Part II).

On April 27, 2013, Petitioner was given Notice of a Hearing before the DHO. (Doc. 10-3 at 24, Attach. 4, Notice of Discipline Hearing before the DHO). Petitioner requested the presence of a staff representative but did not request the presence of any witnesses. (*Id*.). Petitioner was given notice of his rights at the discipline hearing. (Doc. 10-3 at 25, Attach. 4, Inmate Rights at Discipline Hearing).

Petitioner appeared before the DHO on June 4, 2013. (Doc. 10-3 at 16-17, Attach. 4, Disciple Hearing Report for Incident Report #2437632). Petitioner's requested staff representative appeared at the hearing and provided the following statement: "It was not specific where it was found but he does not have a violent history. You can access it from it [sic] behind." (Doc. 10-3 at 16, Attach. 4, Discipline Hearing Report). Petitioner denied the charge. (Doc. 10-3 at 16-17, Attach. 4, Discipline Hearing Report). The Discipline Hearing Report shows that "Inmate Gasaway stated I had no knowledge of it in the room or under the locker." (*Id*.). Petitioner did not request any witnesses. (*Id*.).

The DHO found that Petitioner committed the prohibited act of possession of a weapon, Code 104, as charged based on the "greater weight of the evidence." (Doc. 10-3 at 17, Discipline Hearing Report, ¶¶ IV-V). In making this finding, the DHO relied on the reporting officer's written account of the incident stating he found the plastic piece sharpened to a point with a string and tape handle under a locker in the cell belonging to Petitioner and another inmate, the photograph, and Petitioner's written statement denying knowledge of the weapon. (*Id*.). The DHO considered Petitioner's staff representative's statement "that the

- 5 -

1  incident report is not specific on where it was found and explained the knife was found in a
2  common area of the cell," and Petitioner's statement that he did not know "it was in the room
3  or under the locker." (*Id.*). The DHO commented as part of her findings that, "Inmates are
4  responsible for items found within their area of responsibility.  DHO holds all inmates
5  accountable for items found in their area of responsibility to include items found under their
6  lockers.  It would be difficult to access that space under the locker." (*Id.*). The DHO
7  sanctioned Petitioner by imposing 90 days of disciplinary segregation, suspended pending
8  180 days clear conduct; disallowance of good conduct time for 27 days; and 180 days of lost
9  commissary privileges.  (*Id.*, ¶ VI).  The DHO set forth her reasons for the action taken and
10 notified Petitioner of his appeal rights. (*Id.*, ¶¶ VII & VIII). The DHO report was delivered
11 to Petitioner on July 19, 2013.  (*Id.*, ¶ IX).

12 Petitioner appealed the DHO's findings to the Western Regional Office. (Answer at
13 6; Doc. 10-3 at 30-31, Attach. 5, Regional Administrative Remedy Appeal; Doc. 10-4,
14 Attach. 6, Administrative Remedy History at p. 55).  Petitioner contended that the Incident
15 Report was not investigated and did not specify under which locker the weapon was found;
16 that the area under the locker could not be considered a common area; and that there was not
17 sufficient evidence of guilty because the reporting officer did not state under which locker
18 the weapon was found.  (Doc. 10-3 at 31, Attach. 5).  On September 12, 2013, the Regional
19 Director denied Petitioner's appeal, finding that Petitioner had been afforded due process,
20 that the DHO had indicated the basis of the decision, and that Petitioner was "unable to
21 present credible or verifiable evidence which exonerate[d] [him] from the charge ..." (Doc.
22 10-4 at 62-63, Attach. 7, Regional Administrative Remedy Response).  With respect to
23 Petitioner's claim that the investigation was improper, the Regional Director pointed out that
24 Petitioner did not complain about the investigation during the hearing, and "inmates are
25 afforded the opportunity to present or request evidence for review or consideration at the
26 UDC or DHO hearing, not during the appeal process." (*Id.*).

27 Petitioner appealed to the Central Office in October 2013.  (Doc. 10-4 at 64-65,
28 Attach. 8, Central Office Administrative Remedy Appeal; Doc. 10-4, Attach. 6 at p. 58).

1  The Central Office denied Petitioner's appeal, with the Acting Administrator for National
2  Inmate Appeals finding that the discipline proceedings complied with Program Statement
3  5270.09, Inmate Discipline Program, that "[t]he evidence presented at the DHO hearing ...
4  was sufficient enough to determine you committed the prohibited act (Code 104)," and that
5  Petitioner's due process rights had been upheld. (Doc. 10-4 at 66-67, Attach. 9). The Acting
6  Administrator further concluded as follows:

> Program Statement 5270.09, Inmate Discipline Program, Appendix C, Inmate Rights and Responsibilities, stipulates that inmates are to keep their area free of contraband. Therefore, you are responsible for the weapon found in your cell. Based on the above and your lack of evidence to the contrary, we find your denial of responsibility carries insufficient weight to vindicate you.

(*Id.*).

### III. Discussion

Federal prisoners have a right by statute to good time credits. *See* 18 U.S.C. § 3624. Habeas corpus jurisdiction is available under § 2241 "for a prisoner's claims that he has been denied good time credits without due process of law." *See Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989). "[A] claim challenging prison disciplinary proceedings is cognizable" under the federal habeas statute "only if it will 'necessarily spell speedier release' from custody, meaning that the relief sought will either terminate custody, accelerate the future date of release from custody, or reduce the level of custody." *Nettles v. Grounds*, 788 F.3d 992, 995 (9th Cir. 2015) (citing, *inter alia*, *Skinner v. Switzer*, 562 U.S. 521 (2011)). This may include a petitioner's claim seeking "expungement of a disciplinary finding from his record." *Bostic*, 884 F.2d at 1269. Petitioner complains about the loss of good time credits and seeks to have the Incident Report removed from his record. Respondent notes that Petitioner has a projected release date of November 29, 2024 "via Good Conduct." (Answer at 2, citing Doc. 10-3 at 8, Attach. 2). Petitioner's sentence appears affected by the loss of good time credits. The Court has jurisdiction over Petitioner's § 2241 Petition.

To satisfy the basic requirements of due process in the context of prison discipline

1  proceedings, prison officials need only provide an inmate with: (1) a written notice of the
2  charge at least 24 hours prior to any hearing; (2) an opportunity to call witnesses and present
3  documentary evidence in his defense when such action will not be unduly hazardous to
4  institutional safety or correctional goals; and, (3) a written statement by the factfinders as to
5  the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418
6  U.S. 539, 565-66 (1974).

7  Due process further requires only that disciplinary findings be supported by "some
8  evidence" in the record. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445,
9  454-55 (1985). This standard is met when "there is any evidence in the record that could
10 support the conclusion reached by the disciplinary board." *Id.* at 455-56. While this is a
11 "minimally stringent" standard, "there must be some indicia of reliability of the information
12 that forms the basis for prison disciplinary actions." *Cato v. Rushen*, 824 F.2d 703, 705 (9th
13 Cir. 1987). The "some evidence standard" does not require the court to examine the entire
14 disciplinary record, independently assess the credibility of witnesses, or reweigh the
15 evidence. *Hill*, 472 U.S. at 455.

16 **A.     Petitioner's Failure to Investigate Allegation**

17 The three grounds alleged in the Petition are based in part on Petitioner's claim that
18 he was denied due process because the Incident Report was not investigated.

19 The record shows that the Incident Report was investigated by a prison staff
20 Lieutenant who provided Petitioner with a copy of the report, advised Petitioner of his rights,
21 reviewed the reporting officer's report and the evidence photograph, recorded Petitioner's
22 statement denying that he possessed a weapon, and noted that Petitioner did not request any
23 witnesses. Following this investigation, the matter was referred to the UDC. Petitioner's
24 conclusory claim that the Incident Report was not investigated in compliance with prison
25 procedures is not supported by the record.

26 As Respondent shows in the Answer, 28 C.F.R. § 541.5(b) provides as follows
27 regarding the investigation procedures:

28         (b)     Investigation. After you receive an incident report, a Bureau staff

|   |   |   |
|---|---|---|
| | | member will investigate it. |
| | (1) | Information: The Investigator will specifically inform you: |
| | (A) | of the charge(s) against you; and |
| | (B) | that you may remain silent at all stages of the discipline process, but that your silence may be used to draw an adverse inference against you at any stage of the process. Your silence alone, however, cannot be the basis for finding you committed the prohibited act(s). |
| | (2) | Statement: When the investigator asks for your statement, you may give an explanation of the incident, request any witnesses be interviewed, or request that other evidence be obtained and reviewed. However, the staff investigation of the incident report may be suspended before requesting your statement if it is being investigated for possible criminal prosecution. |
| | (3) | Informally resolving the incident report. The incident report may be informally resolved at any stage of the disciplinary process, except for prohibited acts in the Greatest and High severity levels, or as otherwise required by law or these regulations. If the incident report is informally resolved, it will be removed from your records. |

(Answer at 3-4, citing 28 C.F.R. § 541.5(b)).

Petitioner does not refer to any part of this provision that was not followed in the discipline proceedings. The *Wolff* due process requirements do not require specific investigation procedures. Petitioner has not contended in his Petition or Reply that during the investigation he requested that other evidence be obtained or reviewed. "A habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law." *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011). To the extent that Petitioner asserts in support of Grounds One through Three that the Incident Report was not investigated, he is not entitled to habeas relief on that basis.

### B. "Some Evidence" Supports the DHO's Discipline Determination

In support of Ground One, Petitioner alleges that if staff had performed "the required investigation," and the reporting officer had identified "the exact locker which the alleged weapon was found," it would have shown he is not guilty of the charge. (Pet. at 3). Petitioner further clarifies his failure to investigate claim by asserting in his Reply that the DHO's determination that Petitioner possessed a weapon was not supported by "some evidence:"

> The investigating officer failed to provide a 'reasonable investigation' which, if performed properly would have exonerated Petitioner and this is the reason why: It would have led to the reporting officer going back to the scene in the cell and identifying for the investigating officer, which of the two lockers the alleged weapon was located under. Which evidence is [crucial] in supporting the 'some evidence requirement.' Especially when identifying the guilty party in this matter. Even Petitioner's Staff Representative stated for the record that the incident report failed to identify which of the two lockers the weapon was located under. Why, because this is a very important part of the investigation that would identify who's assigned area the weapon was located in. ...
>
> Furthermore, the investigating Officer's failure to verify the validity of the base assumption that a weapon was found under Petitioner's locker, fails to provide an impartial fact finder sufficient evidence that the alleged weapon was found in petitioner's 'assigned area' of the cell. Suggesting that Petitioner's good time credits were wrongfully taken. And should be reinstated.

(Reply at 2). Petitioner goes on to argue that a reasonable investigation consists of more than the taking of statements from the accused or delivery of the incident report, especially when there is inconsistency in the reporting officer's report regarding in which of the assigned areas the weapon was found. (*Id.*).

Petitioner relies on *Jarrett v. Cross*, Civil No. 12-CV-690-DRH, 2012 WL 3611834 (S.D. Ill. Aug. 21, 2012), in support of his argument. Jarrett, a federal prisoner, claimed he

- 10 -

1  was disciplined in violation of due process procedural protections when he was found guilty
2  of possessing a homemade weapon without "some evidence" that he possessed the weapon.
3  Jarrett shared a cell with another inmate and the reporting officer stated that the weapon was
4  found under Jarrett's locker in a common area of the cell accessible to both inmates. The
5  DHO decided that Jarrett was responsible for a weapon found in the space under his locker
6  because that space was assigned to him. The DHO rejected the suggestion that the space
7  under Jarrett's locker was a common area. The district court denied Jarrett's § 2241 petition,
8  concluding as follows that "some evidence" supported the DHO's finding,

> "[t]he Court asks "whether there is any evidence in the record that could support the conclusion reached" by the DHO. *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir.2000) (emphasis in original). This standard is met with evidence of constructive possession. *Hamilton v. O'Leary*, 976 F.2d 341, 345–46 (7th Cir.1992); *Mason v. Sargent*, 898 F.2d 679, 679–80 (8th Cir.1990). ... [A] finding that the weapon was found in a common space accessible to both Jarrett and Dante Hardin [the other inmate] would not reveal a violation of the Due Process Clause."

*Jarrett*, at *1.

The doctrine of constructive possession may satisfy *Hill's* "some evidence" standard where there is no direct evidence that an inmate actually possessed a weapon. *See Hamilton*, 976 F.2d at 346 ("some evidence" standard met based on finding that homemade weapons were found in a cell occupied by plaintiff and three other inmates); *Mason*, 898 F.2d at 680 ("some evidence" standard met when contraband was found in a locker to which two inmates had access).  (See Answer at 11).

Petitioner challenged the constructive possession theory in his appeals. (Doc. 10-3, Attach. 5; Doc. 10-4, Attach. 8). During the discipline proceedings, Petitioner either denied possessing the sharpened item or denied knowledge of it. Petitioner's staff representative stated on his behalf that it was not specific where the weapon was found. The DHO afforded "greater weight" to the reporting officer's account that the weapon was found under a locker

in the cell occupied by Petitioner and another inmate. The DHO explained as part of her findings that inmates are responsible for items found in their area of responsibility. There was no competent evidence showing that Petitioner and his cellmate did not have access to the area where the weapon was found. The evidence on which the DHO relied is sufficient to meet the standards of due process. *See Hill*, 472 U.S. at 456 ("the evidence before the disciplinary board was sufficient to meet the requirements imposed by the Due Process Clause. The disciplinary board received evidence in the form of testimony from the prison guard and copies of his written report."); *Bostic*, 884 F.2d at 1271 (regarding a prison disciplinary determination, "[t]he reporting officer's testimony constituted sufficient evidence to support the finding of guilty."). The court does not assess the credibility of the witnesses or reweigh the evidence. Petitioner's discipline determination is supported by "some evidence."

**C.     Petitioner's Alleged Undocumented Complaint of No Investigation**

Petitioner contends in Ground Three that he alerted the UDC and the DHO of his complaint that the Incident Report was not investigated but his complaint was not documented. The record shows that Petitioner provided a lengthy handwritten statement to the UDC but did not there complain that the Incident Report had not been investigated. Even if Petitioner made a verbal complaint to the UDC or to the DHO that the Incident Report was not investigated, his argument that it was "crucial" to a finding of guilt that the evidence show that the weapon was found under his locker is misplaced. Based on the record and the DHO's findings, the weapon was found under a locker in a cell Petitioner occupied with another inmate and an inmate is "accountable for items found in their area of responsibility to include items found under their lockers." (Doc. 10-3 at 17, Attach. 4, ¶ V). Petitioner's Ground Three does not provide a basis for relief.

**D.     Petitioner was Afforded Due Process During the Discipline Proceedings**

The record shows that Petitioner was provided the required notice of the discipline charge in the Incident Report, he was afforded the opportunity to call witnesses but chose not to do so, he appeared at the DHO hearing with a staff representative who made a

statement in his behalf, and he was provided with a written statement by the DHO regarding the evidence relied upon and the reasons for the discipline action. Petitioner does not contend that the DHO was involved in the alleged incident as a victim, witness, investigator or otherwise. Petitioner's discipline determination is supported by "some evidence" and the requirements of due process were satisfied. Petitioner's Grounds One through Three asserted in his Petition should be rejected as without merit.

**IV.    Conclusion**

The Magistrate Judge recommends the determination that Grounds One through Three asserted in the Petition do not provide a basis for relief under § 2241. The Court will order the substitution of J.T. Shartle as Respondent in place of Louis Winn, Warden.

//

**RECOMMENDATION**

For the foregoing reasons, the Magistrate Judge recommends that the District Court after its independent review deny the Petition Under 28 U.S.C. § 2241 For A Writ Of Habeas Corpus By A Person In Federal Custody (Doc. 1).

Pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure and LRCiv 7.2(e) of the Rules of Practice of the U.S. District Court for the District of Arizona, any party may serve and file written objections within **Fourteen (14) Days** after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within **Fourteen (14) Days** after being served with a copy. Fed.R.Civ.P. 72(b)(2). No replies to objections shall be filed unless leave is granted from the District Court to do so. If objections are filed, the parties should use the following case number: **CV-15-00248-TUC-RCC**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to de novo review of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

//

//

**ORDER**

**IT IS ORDERED** that J.T. Shartle is substituted as Respondent in place of Louis Winn, Warden.

DATED this 2nd day of September, 2016.

*[signature]*

CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE